MEURER STEEL BARREL CO., INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 7749.   Promulgated May 25, 1927.

> The petitioner, under the facts stated, is entitled to a deduction on account of a debt ascertained to be worthless and charged off during the taxable year.

*Malvin G. Palliser, Esq.*, for the petitioner.
*Thomas M. Wilkins, Esq.*, for the respondent.

This is a proceeding for the redetermination of a deficiency in income and profits taxes for 1920 in the amount of $961.58. The deficiency arises from the action of the Commissioner in disallowing as a deduction the amount of $28,000 claimed by the petitioner in its return as a deduction on account of a debt ascertained to be worthless and charged off during that year.

### FINDINGS OF FACT.

The petitioner is a corporation organized under the laws of New York, having its principal place of business in New York City. It was engaged in the business of manufacturing steel barrels, making an average of 1,500 barrels a day and a gross income of approximately $7,500 a day.

In 1916 E. T. Conway, an employee of the company, approached Jacob Meurer, president of the corporation, for the purpose of obtaining the company's assistance in financing experimental and constructive mechanical work and in furnishing the necessary materials to be used by him in the invention, perfection and production of a certain machine to be used by the petitioner in its business of manufacturing barrels.

In accordance with the usual practice of the company of cooperating with its inventive employees in matters of this kind, Meurer advanced, out of his own pocket, substantial amounts of money during the years 1917, 1918, and 1919, aggregating $28,000, with the understanding that this money was to be used by Conway in conducting his experimental work and in perfecting and producing the machine. Conway was a man without means and could not repay the money unless the machine was perfected and purchased by the petitioner or some one else.

Conway began work in 1917 and used the money advanced by Meurer to have drawings, patterns and castings made, to pay electricians and purchase material. During the fall of 1919, Meurer and his associates reached the conclusion that the machine would not be perfected; that Conway was spending more money than he should; that they had already spent more money in connection with it than

had been anticipated and decided to give up the idea of perfecting the machine. Meurer then demanded of Conway a promissory note for the amount of money advanced by him. While the money was originally advanced by Meurer to Conway out of his own funds, such amount was paid to him by the company when Conway gave his note on October 21, 1919.

The note was due and payable three months after date. On its maturity Conway was unable to pay it or any part thereof. Suit was brought on the note and judgment obtained. An execution was duly issued and was returned *nulla bona*. Thereafter Conway was subjected to an examination for the purpose of determining whether he had any property on which execution might be levied to satisfy the judgment. The examination was made in November, 1920. In this examination Conway testified that he had no assets of any kind on which the execution could be levied. Thereupon and before the end of 1920, the petitioner charged off the indebtedness of Conway on its books as a debt ascertained to be worthless during that year and claimed a deduction in its income-tax return on account of it.

The machine had not been acquired by the petitioner although it was in its possession. It could not, however, have been removed from its possession by Conway unless or until his indebtedness to the company was satisfied. The execution was not levied on this machine.

At the time the judgment was rendered and at the time the company charged off the account against Conway as a worthless debt, the machine had not been perfected and was not workable. It was of no value to any one as a machine. Six months or a year later work was resumed on this machine. Conway, the superintendent, foreman and other employees of the company in the machine shop, began work on the machine and finally perfected it in about a year or eighteen months. When the machine was perfected in 1922, the petitioner acquired it from Conway by a bill of sale, canceled the judgment, paid him some money and then paid him money subsequently. The cost of reproducing a similar machine would have been $11,000, but would have been greater if the petitioner had not had the benefit of drawings prepared by or for Conway. The petitioner included in income for 1922 the amount of $11,000 representing the reproduction cost of the machine.

OPINION.

TRAMMELL: The first question to be determined is whether there was a *bona fide* indebtedness from Conway to the petitioner. From the evidence we think there was. The note was reduced to judgment. Execution was returned *nulla bona*. We can not presume or can we find that there was collusion between the parties. The judgment of the court must be given full force and effect.

We then have the situation where Conway was indebted to the petitioner in the amount claimed. He had no assets except the machine. Work on this machine had been stopped. It was decided not to undertake to perfect it. In its then condition it was not workable and was valueless as a machine. Its only value was its scrap value. Yet, it did not belong to the petitioner. We do not know that the value as scrap would have equaled the cost of dismantling and removing if the petitioner had had execution levied and had recovered the machine. In addition to the fact that the execution was returned *nulla bona*, the debtor was subjected to examination for the purpose of ascertaining if he had any property out of which the execution could be satisfied. This examination disclosed that he had no assets subject to execution.

Under the facts and circumstances, it is our opinion that the petitioner ascertained the debt in question to be worthless and charged it off during the taxable year involved.

> *Judgment will be entered on 15 days' notice, under Rule 50.*